Dorothea E. Donaldson, J.
In this claim for damages for personal injuries sustained by and for wrongful death of the decedent, Vincent Fiumara, predicated upon the negligence of the State of New York in its failure to exercise the duty imposed by former subdivision 4 of section 240 of the Labor Law, the defendant moved to dismiss the claim contending that the court did not have jurisdiction in that (1) claimant’s sole remedy lay within the provisions of the Workmen’s Compensation Law and (2) the claim was not timely filed within the provisions of subdivision 2 of section 10 of the Court of Claims Act.
With respect to defendant’s first contention, it is well settled that the defense of the Workmen’s Compensation Law applies only to the employer-employee relationship and not to an alleged third party tort-feasor (Workmen’s Compensation Law, § 29). There was no employer-employee relationship between decedent and the defendant or contractual relationship between decedent’s employer and the State. The contention, therefore, is not valid, However, it is to be noted that benefits under the *194 Workmen’s Compensation Law are being paid, on the compensable claim, to decedent’s widow.
Defendant’s second contention maintained that, on July 17, 1962 when the notice of intention to file a claim was filed, there was in existence no legal person who could sue on behalf of the estate. Vincent Fiumara died on April 25, 1962. The administrator was appointed on October 4, 1962 by order of the Surrogate for the County of Westchester. On January 31, 1963 the notice of claim was filed by the administrator.
In a wrongful death claim, the Statute of Limitations provided by subdivision 2 of section 10 of the Court of Claims Act directs that the claim or notice of claim be filed within 90 days of the appointment of the executor or administrator. The purpose of the notice of intention to file a claim is to alert the defendant to the existence of a claim and not to establish the legal status of the one who filed. Notice of intention to sue may be filed by 9, relative or friend. (Matter of Figueroa v. City of New York, 279 App. Div. 771; Winbush, v. City of Mount Vernon, 306 N. Y. 327.) The fact that the notice of intention to file claim was filed earlier than the statute requires inures to the benefit of the State. The court therefore believes, and so finds, that the State having had knowledge of the claim through the receipt of the notice of intention to file claim was not prejudiced and that the claim having been filed within two years from the date of death was therefore timely filed within the provisions of subdivision 2 of section 10 of the act.
On April 23, 1962, Vincent Fiumara was employed as a bricklayer for the firm of Palmieri and Sons who were subcontractors in brick and masonry work in the construction of an apartment house in the Village of Eastchester in Westchester County. Shortly before noon on that day, Mr. Fiumara was working on a scaffold when a wooden structure nearby collapsed and apparently struck the scaffold, throwing Mr. Fiumara to the ground. As a result of this accident Mr. Fiumara died two days later on April 25, 1962. Decedent left him surviving his widow, Maria Fiumara, residing in Italy, aged 54, and one son, Roberto, under the age of 21 at the time of decedent’s death. All other children were over the age of 21 and all, except Joseph Fiumara and one other son, resided in Italy.
Claimant contended that the structure that had collapsed was a hoist tower which the defendant had failed to inspect. Claimant maintained that the negligence of the State was founded on the failure of a Safety Inspector of the Department of Labor to properly inspect the construction job on which decedent was employed, to determine all existing violations *195 that would create hazardous working conditions, to conduct the inspection in accordance with the requirements established by the New York State Industrial Code, and to personally inspect on each and every visit to the jobsite all of the structures on which decedent and his co-employees would be working. It was urged that the inspector had the right and the duty to prevent and interrupt construction, erection or use of any structures unless the same was safe and free from violations.
Section 240 of article 10 of the Labor Law specifically refers to ‘ ‘ Scaffolding and other devices for use of employees ’ ’. In former subdivision 4 of said section the “commissioner shall immediately inspect a scaffold or device concerning which complaint is made ”. The balance of this subdivision indicates the kind of certificate which an inspector shall attach to a scaffold or device that is found to be safe or unsafe. The initial responsibility for supplying safe scaffolding rests with the employer. There is no allegation or proof in this claim that a complaint was made to the Industrial Commissioner that a scaffold or any structure on the building site was unsafe or that the inspection was in response to any complaint.
Decedent worked on an apartment building approximately 200 to 250 feet in length and about 70 feet wide situated between Main and New Streets in the Village of Eastchester. The topography of the land was level at grade of New Street and Main Street with a peak or crest near the center of the property so that the foundation seemed to be erected in an arc. Mr. Vincent Fiumara was laying brick on the south wall of this building about five to six feet above the ground on April 23, 1962. The scaffold had been erected all around the building for the use of the bricklayers.
An Inspector for the Department of Labor had inspected the construction site on April 18, 1962 and had indicated to the contractor, Palmieri and Sons, that there were several violations which he would examine within the next five days to see that they had been corrected. On April 23, about 9:30 in the morning, the Inspector returned, inspected the scaffold, found that the violations had been corrected, and declared that the scaffold was safe. In the meantime, the contractor had directed its employees to erect a structure near to the south wall of the apartment building upon the peak or crest of the hill, not far from the building aperture which identified the location of the entrance way into the apartment house. This wooden structure, approximately 40 feet in height, was erected on Saturday, April 21, and was the structure that collapsed at about noon on April 23, striking the scaffold and causing decedent’s fall. *196 The scaffoldmén testified that the structure was to he used as a hoist tower, although, at the time of the accident, there was neither machinery nor cables nor equipment to use the same as a hoist tower nor was there any necessity for hoisting of material to bricklayers who were at an insufficient height from the ground to require such assistance.
No proof has been submitted to show what caused the structure to collapse. Some testimony indicated that a strong wind blew the structure over. The claimant sought the inference that the structure was improperly erected, that there were insufficient tie-ins as required under the Safety Code of the Labor Department and that such tie-ins were of spliced guy wires and that the height of the structure was excessive. All testimony was in agreement that the structure was not in use on the day of the accident nor was it ready to be set in operation.
Workmen and employees of employers in the State of New York are entitled to the greatest protection that the law permits. Regulations relative to working hours, working conditions, safety devices, etc., are all important factors in the prevention and protection of injury and accident to the people of the State. The Industrial Code and the rules and regulations thereunder must be strictly construed and require strict performance in order to protect the happiness and lives of those who work in this State. It is the responsibility of Inspectors associated with the Labor Department to see that hazardous conditions are kept to a minimum for all types of workmen in the State of New York and to direct full and complete and exact compliance with their directions in order to overcome any violations of the Safety Code. This applies specifically to those devices, scaffolds and materials that are being used daily by workmen. Unnecessary inspections delay labor inspectors from completing their daily rounds and from doing the kind of work that is necessary on all building sites and building inspections throughout their area of responsibility. It is necessary that an inspection to determine violations must be longer, more detailed and more complete than any later inspection which is a “ follow-up ’ ’ on compliance with known violations.
The administrator reiterated that it was the responsibility of the Labor Inspector to have perceived the structure on the. morning of April 23 when he returned for the compliance visit; and to have inspected the same. Even if the Inspector had noted the structure, which was embryonic, did he have a duty to take' advance measures to avoid the collapse? While the State has. waived its sovereign immunity and assumes liability for the negligent acts of its officers, agents and employees (Court of *197 Claims Act, § 8), no greater obligation is thereby incurred than rests upon an individual or corporation under similar circumstances. (Metildi v. State of New York, 177 Misc. 179.) There is nothing in the record to indicate that the Inspector acted with other than reasonable diligence. The query must be answered in the negative.
Claimant has failed to produce any expert testimony to show that a fault in the construction or height of the structure, affected by the increase in wind velocity on April 23, was the competent producing cause for the toppling of the structure and the striking of the scaffold, causing it, likewise, to fall. There is also no proof that the failure of the Inspector, if any, to inspect the structure was the competent producing cause of the fall of the structure and the sequence of events that followed. Claimant has failed to sustain the burden of proof.
The claim must be, and hereby is, dismissed.
Motions made by the defendant, the State of New York, to dismiss the claim at the close of claimant’s proof, upon which decision was reserved, are now denied. Motions to dismiss made by the defendant at the close of the entire case, upon which decision was reserved, are now granted.